**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____
                                    :
DERRICK BURNSIDE,                   :   CIVIL ACTION
            Petitioner,             :
                                    :
      v.                            :   NO. 10-3644
                                    :
MICHAEL WENEROWICZ,                 :
et al.,                             :
                                    :
            Respondents.            :
_____:

ARNOLD C. RAPOPORT
UNITED STATES MAGISTRATE JUDGE

### REPORT AND RECOMMENDATION

Derrick Burnside has filed a counseled Petition for writ of habeas corpus.  Burnside was convicted in the Court of Common Pleas for Lancaster County of second degree murder, criminal conspiracy to commit homicide, arson, criminal conspiracy to commit arson and recklessly endangering another person.  For the following reasons, I recommend that the Petition be dismissed without an evidentiary hearing.  I further recommend that no certificate of appealability should be issued.

I.   **FACTS AND PROCEDURAL HISTORY**[1]

The facts at trial established that the events giving rise to the conviction of Burnside occurred on December 22, 1998 at or near 523 Manor Street, Lancaster, Pennsylvania.  Burnside was

_____

[1] The facts of Burnside's crimes are taken from the Pennsylvania Superior Court opinion on Burnside's direct appeal. (Resp. Ex. C.)

1

found guilty for his participation in the burning death of James Bell.  On the date of the incident, James Bell was set on fire by Burnside and a co-conspirator, Eddie Vasquez, in exchange for the provision of crack cocaine to Mr. Bell.  Testimony at trial indicated that Mr. Bell had been doused with lighter fluid before being set on fire.  Testing of Mr. Bell's clothing also suggested the presence of an accelerant.  Testimony was not definitive as to who physically set Mr. Bell on fire.  Due to complications from the burns inflicted upon Mr. Bell, which covered 18-20% of his body surface, Bell later died on January 30, 1999 at Crozer Chester Medical Center.  The manner of death was listed as homicide.

Burnside was convicted by a jury on June 10, 2004, and on July 14, 2004, the Honorable Paul K. Allison sentenced him to life imprisonment.  Burnside appealed to the Pennsylvania Superior Court on August 3, 2004.

On direct appeal, Burnside argued that:  1) the trial court erred by allowing the introduction of his uncharged misconduct and prior bad acts, 2) the trial court erred by refusing to allow Burnside to question Jeffrey Rodriguez regarding an admission made by co-defendant Eddie Vasquez, 3) the trial court erred by allowing the introduction of photos of a piece of physical evidence that had been lost and/or destroyed, 4) the trial court erred by failing to grant Burnside's motion for judgment of

acquittal on the arson charge, 5) the second degree murder charge should be dismissed due to the trial court's erroneous ruling on the judgment of acquittal, 6) the trial court erred by failing to dismiss the criminal information for prejudicial pre-arrest delay, 7) whether the evidence adduced at trial was insufficient to sustain the charges in the criminal information beyond a reasonable doubt. (Resp. Ex. B.)  The Superior Court affirmed the judgment of the trial court on December 14, 2005, and on February 23, 2006, denied Burnside's application for reconsideration. (Resp. Exs. C and E.)

On March 23, 2006, Burnside petitioned the Pennsylvania Supreme Court for review, and on September 14, 2006, the Supreme Court granted the Petition limited to the issue of whether the Superior Court correctly interpreted the arson statute.  (Resp. Exs. F and G.)  On June 8, 2007, the Supreme Court dismissed Burnside's appeal as being improvidently granted.  (Resp. Ex. I.)

On May 13, 2008, Burnside filed a counseled Post Conviction Relief Act (PCRA) petition, alleging that trial counsel was ineffective for failing to object to the jury charge which allegedly allowed the testimony of witnesses who had criminal pasts to carry more weight than the law allowed, and for failing to object to the use of a substitute medical examiner.  (Resp. Ex. J.)  A hearing on Burnside's PCRA claims was held on October 1, 2008.  On December 12, 2008, the PCRA court dismissed the

3

petition.  (Resp. Ex. L.)

On January 5, 2009, Burnside filed a timely Notice of Appeal to the Superior Court of Pennsylvania, which raised three issues: 1) whether trial counsel was ineffective for failing to object to the jury charge on impeachment, 2) whether an incorrect instruction limiting impeachment can be cured by another instruction which correctly states the law, and 3) whether an incorrect instruction can be cured by trial counsel's cross-examination of witnesses regarding pending and current criminal matters.  (Resp. Ex. M.)  On December 16, 2009, the Superior Court vacated Burnside's concurrent sentence for arson, and affirmed the PCRA court's decision in all other respects.  (Resp. Ex. N.)

On January 11, 2010, Burnside filed a Petition for Allowance of Appeal to the Supreme Court of Pennsylvania, which was denied by the Supreme Court on May 27, 2010.  (Resp. Exs. O and P.)

Burnside's federal petition was filed on July 26, 2010.  He raises the following claims: 1) trial counsel was ineffective for failing to object to the charge of the court which directed the jury to consider only favorable treatment actually received as an impeaching factor and negated - as an impeaching factor - the expectation of leniency sought by the witnesses when their statements were made and when their testimony was given; and 2) due process violations/trial court error in denying Burnside the

4

right to cross-examine a commonwealth witness, Jeffrey Rodriguez,
and in so doing excluded a statement made to Rodriguez by co-
defendant Eddie Vasquez that "I burned a guy last night." (Pet.
at 8-10.)

## II.  LEGAL STANDARDS

I analyze these claims according to the precepts of the
Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)
which altered habeas review of state convictions brought under §
2254.  Under AEDPA, a petitioner must demonstrate that the state
court's adjudication of the merits "resulted in a decision that
was contrary to, or involved an unreasonable application of
clearly established Federal law, as determined by the Supreme
Court of the United States." Penry v. Johnson, 532 U.S. 782,
792-93 (2001) (explaining two-prong standard); Williams v.
Taylor, 529 U.S. 362, 403-04 (2000) (same).  Additionally, state
court findings of fact are to be presumed correct unless the
petitioner rebuts the presumption with clear and convincing
evidence.  See 28 U.S.C. § 2254 (e) (1).  This presumption
applies even if the finding was made by a state court of appeals
rather than by the state trial court.  Bragg v. Galaza, 242 F.3d
1082, 1087 (9th Cir.) amended, 253 F.3d 1150 (9th Cir. 2001).

The Supreme Court has said that "a state court decision will
be 'contrary to' our clearly established precedent if the state
court either 'applies a rule that contradicts the governing law

set forth in our cases,' or 'confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent.'" Penry, 532 U.S. at 792 (quoting Williams, 529 U.S. at 405-06.  A state court decision is an unreasonable application of the Supreme Court's precedent if the court "correctly identifies the governing legal rule but applies it unreasonably to the facts" of the case. Id.

## III. DISCUSSION

### A. Ineffective assistance for failing to object to jury instructions regarding witness credibility

I recommend that the state court adjudication of Burnside's ineffective assistance claim was not an unreasonable application of clearly established Supreme Court law.  The clearly established Supreme Court law governing claims of ineffective assistance of counsel is Strickland v. Washington, 466 U.S. 668, 687 (1984), wherein the Court established a two-pronged test to evaluate Sixth Amendment claims of ineffective assistance of counsel.  An individual making such a claim must show: (1) that "counsel's performance was deficient," which is measured by "reasonableness under prevailing professional norms;" and (2) that counsel's "deficient performance prejudiced the defense." Id. at 687-90.

The Pennsylvania standard for ineffective assistance, i.e.,

that to show ineffective assistance a petitioner must show that
the underlying claim has merit, that counsel had no reasonable
basis for his conduct, and resulting prejudice (meaning that the
outcome of the proceeding would have been different) see
Commonwealth v. Todaro, 701 A.2d 1343, 1346 (1997), is materially
identical to the test enunciated in Strickland.  See Werts v.
Vaughn, 228 F.3d 178, 203 (3d Cir. 2000).  Therefore, "the
appropriate inquiry is whether the Pennsylvania courts'
application of Strickland to [petitioner's] ineffectiveness claim
was objectively unreasonable, i.e., the state court decision,
evaluated objectively and on the merits, resulted in an outcome
that cannot reasonably be justified under Strickland."  Werts,
228 F.3d at 204.

Burnside's ineffective assistance claim was exhausted on
PCRA appeal.  He asserts that his trial counsel was ineffective
for failing to object to the court's jury charge regarding
witness bias and the expectation of leniency when five of the
witnesses who testified against him had pending criminal charges.
(Pet. at 8.)  The state courts concluded that this claim was
meritless.  I recommend that the state courts' application of
Strickland was not unreasonable.

The PCRA court held that Burnside's trial counsel had a
reasonable basis for not objecting to the jury charge on witness
credibility, reasoning that no bias charge was required where the

jury was properly instructed to receive a witness' testimony
"with caution . . . if you find he received favorable treatment
from the Commonwealth in exchange for his testimony."  (See Resp.
Ex. L at 3.)  Further, the PCRA court noted that all of the
witnesses in question were thoroughly examined and cross-examined
regarding their current and pending criminal matters and any
favorable treatment or expectations of leniency.  (See Resp. Ex.
L at 3.)  The PCRA court further stated that the Pennsylvania
Supreme Court has required only that a jury be made aware of the
possible bias of a witness based on received or hoped-for
leniency, and in Burnside's case, the jury was made aware of any
potential bias.  Therefore, the PCRA court determined Burnside's
claim of ineffectiveness must fail.  (Resp. Ex. L at 3-4.)

     The Superior Court affirmed, after conducting a detailed
analysis of the testimony of each witness.  Specifically, the
Superior Court discussed each of the witnesses in question, what
their pending charges were, what they expected when they agreed
to testify against Burnside and what, if anything, they were
promised in exchange for their testimony.  (See Resp. Ex. M at 8-
15.)  The Superior Court also discussed the trial court's jury
instruction on witness credibility.  (See Resp. Ex. M at 15-16.)
After analyzing the testimony of each witness, as well as the
trial court's instructions, the Superior Court concluded:

     Here, counsel cross-examined the witnesses about their
     pending charges, and his questioning explored any

expectations of leniency they harbored in exchange for
their cooperation in [Burnside]'s prosecution.
Thereafter, the court provided a general charge,
thoroughly instructing the jury to consider the
possibility of bias in evaluating the credibility of
each witness.  Under these circumstances, [Burnside]
has failed to demonstrate he suffered prejudice through
the absence of a specific instruction addressing each
of the witnesses' expectations of leniency for their
pending criminal charges.  Therefore, counsel cannot be
considered ineffective on this basis.  Thus, [Burnside]
merits no relief on his ineffective assistance of
counsel claims.

(Resp., Ex. M at 17 (internal citations omitted).)

These determinations by the state court were not contrary

to, nor an unreasonable application of <u>Strickland</u>.  It was not

unreasonable for the state courts to determine that Burnside was

not prejudiced by trial counsel's failure to object to the jury

instruction for its failure to include a bias instruction.  <u>See</u>

<u>Jackson v. Britton</u>, No. 08-4203, 2010 WL 1337730, at *7-8 (E.D.

Pa., Apr. 6, 2010)(Reed, J.).

During both direct and cross-examination of George Parker, a

witness who testified against Burnside, counsel elicited great

detail from Parker about his pending criminal charges and the

fact that he had no deal with the Commonwealth in exchange for

testifying against Burnside, but that he hoped for leniency on

his open charges.  (N.T. 6/7/04 at 134-35, 162-64, 165-67, 171-

72, 177.)  The same information was elicited from Michael Gantz

on both direct and cross-examination (N.T. 6/7/04 at 186-88, 202-

205, 207,) James Lilly (N.T. 6/8/04 at 309-311, 323-327,) Brandon

Beatty (N.T. 6/9/04 at 413-415, 425, 430-33,) and Noel Fernandez (N.T. 6/9/04 at 435-36, 438, 459-463).  Further, in his closing argument, Burnside's trial counsel argued to the jury that they needed to judge "the credibility of each and every witness," and argued in detail how the pending charges and expectations of leniency of Carl Parker, James Lilly, Noel Fernandez, Michael Gantz and Brandon Beatty could affect the testimony of each witness against Burnside.  (N.T. 6/10/04 at 657, 660-663, 670-76.)

In its final charge, the trial court instructed the jury as follows:

> You must consider and weigh the testimony of each witness and give it such weight as in your judgment it is fairly entitled to receive.  The matter of credibility of a witness, that is, whether his or her testimony is believable and accurate in whole or in part is solely for your determination.
>
> Some of the factors which might bear on that determination are whether the witness has an interest in the outcome of the case, has a friendship or animosity toward other persons concerned in the case, the behavior of the witness on the witness stand, his or her demeanor, manner of testifying, whether he or she shows any bias or prejudice which might color his or her testimony, the accuracy of his or her memory and recollection, his or her ability and opportunity to acquire knowledge of or to observe the matters concerning which he or she testifies, the consistency or inconsistency of his or her testimony as well as it's reasonableness or unreasonableness in light of all of the evidence in the case.
>
> . . .
>
> You should examine closely and carefully and receive with caution the testimony of any witness if you find

>that he's received favorable treatment from the
>Commonwealth in exchange for his testimony. That
>doesn't mean you must automatically disbelieve that
>testimony but it is a factor you must consider.

(N.T. 6/10/04 at 716-717.)

A review of the above shows that the trial court's instructions properly guided the jury regarding how to evaluate witness credibility.  In light of the direct and cross-examination of the five witnesses in question, as well as the closing argument of Burnside's counsel and the court's jury charge, the state courts determined that Burnside suffered no prejudice due to his counsel's failure to object to the jury charge for its failure to include an instruction on bias.  I recommend that Burnside has failed to establish the outcome at trial would have been different had his counsel objected to the jury charge and requested a bias instruction.  Therefore, I recommend that Burnside's ineffective assistance claim has no merit.

**B.   Exclusion of Hearsay Statement of Co-Defendant**

Burnside's second claim is that the trial court erroneously denied him the right to cross-examine a Commonwealth witness, Jeffrey Rodriguez, and in so doing excluded a statement made to Rodriguez by Burnside's co-defendant, Vasquez, that "I burned a guy last night."  (Pet. at 10.)  First, I must determine if this claim is exhausted.  Burnside alleges that this claim was exhausted on direct appeal, stating:

11

>direct appellate counsel presented [this claim] to the
>Superior Court as a due process claim, stating, Here,
>Eddie Vasquez has offered a statement of sole
>responsibility for the crime Mr. Burnside stands
>charged with.  Not only is Mr. Vazquez's (sic)
>statement relevant and material to Mr. Burnside's
>defense, but it is absolutely necessary under the Due
>Process protections afforded to Mr. Burnside that he be
>allowed to present any and all possible defenses to the
>crime he is charged with.

(Pet. at 7.)  Burnside further states that "Due Process is not

mentioned at all in the Pennsylvania Constitution and its use in

raising and arguing this claim heralds a federal confrontation

issue."  (Pet. at 7.)

The habeas statute requires that prisoners exhaust their

claims in state court before seeking relief from the federal

courts.  See 28 U.S.C. § 2254(b)(1)(A) ("An application for a

writ of habeas corpus on behalf of a person in custody pursuant

to the judgment of a State court shall not be granted unless it

appears that . . . the applicant has exhausted the remedies

available in the courts of the State.").  Absent exceptional

circumstances, a federal court may not determine the merits of a

habeas corpus petition until the petitioner has exhausted all

means of available relief under state law.  28 U.S.C. § 3354(b);

O'Sullivan v. Boerkel, 526 U.S. 838, 839 (1999); Slutzker v.

Johnson, 393 F.3d 373, 379 (3d Cir. 2004).  In addition, in order

to satisfy the exhaustion requirement, a federal habeas claim

must have been "'fairly presented' to the state courts. . . .

This means that a petitioner must 'present a federal claim's

factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted.'" Bronstein v. Horn, 404 F.3d 700, 725 (3d Cir. 2005) (internal citations omitted).  The relevant inquiry is whether the petitioner presented in state courts the legal theory and supporting facts asserted in the federal habeas petition.  Nara v. Frank, 488 F.3d 187, 198 (3d Cir. 2007); Keller v. Larkins, 251 F.3d 408, 413 (3d Cir. 2001).

In the instant case, I give Burnside the benefit of the doubt and recommend that by briefly discussing due process issues in his direct appeal to the Superior Court, he fairly presented his due process argument to the state courts.[2]  Therefore, I recommend this claim has been exhausted and will decide the issue on its merits.

I recommend that Burnside's claim that the trial court erred by excluding an alleged hearsay statement of his co-defendant does not amount to a due process violation.  The role of this court on habeas review is not to decide whether a state trial judge's decision to admit or exclude evidence pursuant to a state evidentiary rule was proper.  See Marshall v. Lonberger, 459 U.S. 422, 438, n. 6, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983).  There must

---

[2] I also note that Respondents agree that this claim has been exhausted, stating "Petitioner's . . . claim that the trial court's evidentiary ruling denied him the right to cross-examine a witness was raised on direct appeal. As such, Petitioner has exhausted the state remedies available for his claims by fairly presenting them to each level of the Pennsylvania courts."  (Resp. at 11.)

be a due process violation in order for a violation of a state evidence rule to constitute grounds for habeas relief.  Engel v. Isaac, 456 U.S. 107, 119, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982). In addition, the trial judge has broad discretion with respect to the admission or exclusion of evidence.  In re Merritt Logan, Inc., 901 F.2d 349, 359 (3d Cir. 1990).  A state court's admission or exclusion of evidence violates the Due Process Clause only if it "so infuse[s] the trial with unfairness as to deny due process of law."  Riggins v. Nevada, 504 U.S. 127, 147, 1121 S.Ct. 1810, 118 L.Ed.2d 479 (1992)(internal quotation marks omitted).

In the instant case, shortly after the victim was burned, Jeffrey Rodriguez, an occupant of the house where the burning occurred, confronted co-defendant Vasquez regarding the incident in question.  (Pet's. Reply Br. at 14.)  In response to questioning by Rodriguez, Vasquez allegedly stated, "I burned a guy last night."  (N.T. 6/2/04 at 4.)  After oral argument from counsel, the trial court precluded this statement allegedly made by co-defendant Vasquez as inadmissible hearsay to which no exception applied.[3]  (N.T. 6/2/04 at 8.)  Burnside claims that

---

[3]  Pa.R.E. 804(b)(3) requires the declarant to be unavailable and provides as follows:

*Statement Against Interest.*  A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the

Vasquez's alleged statement was a "significant part of
[Burnside]'s defense," and that "exclusion of this testimony
prevented a good portion of [Burnside]'s defense from being heard
by the jury."  (Pet's. Reply Br. at 15-16.)

In analyzing the admissibility of this statement, the trial
court stated:

> the statement to which Jeffrey Rodriguez would have
> testified clearly qualifies as hearsay and as such is
> not permitted under the Pennsylvania Rules of Evidence.
> Nevertheless, [Burnside] argues that the statement is
> still admissible under the declaration against penal
> interest exception to the hearsay rule.  Based on the
> comments to Pennsylvania Rules of Evidence 804(b) and
> relevant case law, the Court cannot agree.  The law on
> this issue is quite clear.
>
> > Public policy, the fundamental principles of
> > fairness and the due process of law requires
> > the admission of declarations against penal
> > interest where it can be determined that
> > those statements: (1) exculpate the defendant
> > from the crime for which he is charged; (2)
> > are inherently trustworthy in that they are
> > written or orally made to reliable persons of
> > authority or those having adverse interest to
> > the declarant; and that they are made pre-
> > trial or during the trial itself.
>
> The statement allegedly made by Eddie Vasquez, the co-
> defendant, does not meet either of these criteria.
> Although [Burnside] may, in a manner of speaking, may
> (sic) be correct that the statement of Vasquez
> demonstrates that someone claimed responsibility for
> the crimes charged, the statement does not exculpate
> [Burnside].  The statement does not preclude
> [Burnside]'s participation in the crimes.  The

---

declarant's position would not have made the statement unless
believing it to be true.  In a criminal case, a statement tending
to expose the declarant to criminal liability is not admissible
unless corroborating circumstances clearly indicate the
trustworthiness of the statement.

> Commonwealth's theory of the case permitted the jury to
> find [Burnside] guilty as a principle or as an
> accomplice.  Finally, Vasquez's statement was not made
> consistent with the indicia of inherent trustworthiness
> required by Pennsylvania law.  The statement was
> neither made to a reliable person of authority or to
> someone having an adverse interest to the declarant.

(See Resp. Ex. A at 9-10.)

On appeal, the Superior Court addressed Burnside's argument

regarding the exclusion of this hearsay statement as follows:

> The trial court found no indications of the required
> element of trustworthiness. [Burnside] argues the
> statement was trustworthy because the co-conspirator
> "was not being interrogated by officials when the
> statement in question came about.  Rather [he]
> spontaneously volunteered evidence of his culpability
> to another individual."  Contrary to [Burnside]'s
> argument, the circumstances he describes do not bolster
> his claims of trustworthiness.  The co-conspirator was
> speaking to a 15-year-old boy who lived at the house at
> which the crime took place.
>
>                           . . .
>
> We find no error in the trial court's evaluation of the
> lack of trustworthiness inherent in the circumstances
> surrounding the making of this statement.  We further
> note that although [Burnside] characterizes the
> statement as one in which his co-conspirator takes
> "sole responsibility" for the crime, that claim is
> belied by the statement itself.  At best, the statement
> is admission by the co-conspirator to the crime with
> which he was also convicted.  It does not exculpate
> [Burnside].

(Resp. Ex. C at 4-5.)

Burnside relies upon Chambers v. Mississippi, 410 U.S. 284,

93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), and Crane v. Kentucky, 476

U.S. 683, 691, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986), in support

of his argument that the exclusion of the statement of co-

defendant that he "burned a guy last night" was sufficiently reliable to be admissible hearsay, despite a state evidentiary rule to the contrary.

As discussed by Respondents, the issue in <u>Chambers</u> focused on several admissions by an individual named Gable McDonald who confessed on three separate occasions, once under oath, to committing the murder with which Chambers was charged, but then later repudiated.  <u>Chambers</u>, 410 U.S. 284.  Three different witnesses were prepared to testify at trial that McDonald had confessed to the murder in question.  <u>Id.</u> at 292-293.  However, at the time of Chambers' trial, Mississippi did not recognize statements against penal interest as an exception to the hearsay rule, and each of McDonald's three confessions was excluded from trial.[4]  <u>Id.</u>  The Supreme Court concluded that the exclusion of these hearsay statements, combined with the refusal to allow Chambers to cross-examine McDonald, deprived Chambers of a fair trial.  <u>Id.</u> at 302.

The Pennsylvania evidentiary rule excluding hearsay statements is very different from the evidentiary rule at issue in <u>Chambers</u>.  In the instant case, the Superior Court issued a well-reasoned opinion, and concluded that the hearsay statement did not serve to exculpate Burnside, was not trustworthy and

---

[4] Further, Chambers was precluded from calling McDonald to testify under a Mississippi common law rule called the "voucher rule," which prevented a party from impeaching his own witness.  <u>Chambers</u>, 410 U.S. at 295.

therefore was properly excluded.  The state evidentiary rule in Chambers did not contain any exception allowing for the admission of a hearsay statement against penal interest if it was found to be reliable, as the Pennsylvania rule does.  Furthermore, the hearsay statement in our case was made to a 15 year old boy, not a reliable person of authority or someone having an adverse interest to the declarant as required by Pennsylvania Rules of Evidence.  Nor did the alleged statement serve to exculpate Burnside, as required by the Pennsylvania Rules of Evidence.[5] Therefore, the alleged statement did not meet the exception to the Pennsylvania hearsay rule for the admissibility of a hearsay statement against penal interest.

Burnside has not shown that the exclusion of Vasquez's alleged hearsay statement rendered his trial "fundamentally unfair."  Dawson, 503 U.S. at 179.  Accordingly, I recommend that his due process claim has no merit.[6]

---

[5] Burnside also cites to Crane v. Kentucky, 476 U.S. 683, 691, in support of his claim that the hearsay statement in question should have come in at trial.  Crane dealt with a 16 year old defendant who confessed to a murder, then sought to suppress his confession at the time of trial.  The trial court found that the defendant's confession was voluntary and allowed its admission at trial.  Defendant sought to introduce at trial the circumstances surrounding his confession (the length of the interrogation, etc), to show that the confession should not be believed.  The trial court found that testimony regarding the circumstances of defendant's confession were inadmissible.  On appeal, the Supreme Court found that the exclusion of the testimony about the circumstances of Defendant's confession deprived him of his fundamental constitutional right to a fair opportunity to present a defense.  Crane is clearly distinguishable from the instant set of facts, and therefore has no bearing on my recommendation.

[6] I note that the Honorable Richard B. Klein of the Pennsylvania Superior Court dissented from the majority's decision on Burnside's direct appeal and found the trial court's exclusion of Vasquez's hearsay statement to

For all of these reasons, I make the following:

---

be reversible error.  However, as Judge Klein dissented on the issue of the
application of a state evidentiary rule, and not on the due process issues
which are before me today, I find no cause to recommend the issuance of a
certificate of appealability.

**RECOMMENDATION**

AND NOW, this 29th day of September, 2011, IT IS RESPECTFULLY RECOMMENDED that this matter should be DISMISSED without an evidentiary hearing. I further RECOMMEND that there is no probable cause to issue a certificate of appealability.

The Petitioner may file objections to this Report and Recommendation. See Local Civ. Rule 72.1. Failure to file timely objections may constitute a waiver of any appellate rights.

BY THE COURT:


  /s/ Arnold C. Rapoport
ARNOLD C. RAPOPORT
UNITED STATES MAGISTRATE JUDGE